23-1821. This is Craig v. Wrought Washer Manufacturing. We're going to begin with argument from the appellant, Mr. Kinney. Opposing counsel, may it please the court. The issue before the court is both simple and fundamental. All Schaefer testified in his deposition that he told Jebari Craig that if he wished to go back to work under the last chance agreement, Craig had to give up his race discrimination claims. In response to Wrought Washer's motion for summary judgment, Craig used Schaefer's testimony to prove that an issue of material fact existed with respect to whether Schaefer retaliated against Craig when Schaefer fired him. Schaefer tried to to have been confused at his deposition. In his declaration, different from his deposition, Schaefer denied telling Craig that Craig had to abandon his race discrimination claims as part of the last chance agreement. Schaefer claimed that he confused the terms of the last chance agreement with the terms of the severance agreement that was later presented to Craig. The district court erred when it concluded as a matter of law that Schaefer did not tell Craig that Craig had to abandon his race discrimination claims to return to work under the last chance agreement. There is very strong evidence that Schaefer was not mistaken in his testimony. First, during the deposition, Craig's counsel showed Schaefer the last chance agreement. At that point, there could be no confusion with respect to the document that Schaefer was discussing in his deposition. Schaefer noted that the last chance agreement was a full and final settlement, but Schaefer testified under oath that he told Craig that the last chance agreement was a full and final settlement. If Schaefer had confused the severance agreement with the last chance agreement, seeing the last chance agreement would have cleared up that confusion. That Schaefer repeated that he told Craig the last chance agreement required Craig to give up his claims under Title VII with the last chance agreement immediately in front of his eyes. This forecloses the possibility of a mistake. Second, a break occurred during the deposition, specifically for the purpose of educating Schaefer about the severance agreement. After that break, Schaefer testified again that he told Craig that unless he signed the last chance agreement, Craig would be fired, and that he told Craig signing the last chance agreement meant giving up Craig's race discrimination claims. The third paragraph of his declaration, Schaefer states, I confused the last chance agreement with the severance agreement. In fact, I mistakenly did not even recall the severance agreement offered Craig as a separate agreement. As a corporate representative, I had to investigate the matter on a break to refresh my recollection. Schaefer's testimony that he told Craig that the last chance agreement included full and They took this break after he had a chance to review the document and educate himself. The third piece of evidence showing that this wasn't a mistake is Craig's own testimony. Craig has provided sworn testimony in the form of a declaration that Schaefer told him that the last chance agreement required Craig to give up his claims, and that if Craig did not sign the last chance agreement, Craig would be fired. What's odd about that, Mr. The thing that really throws me off about that case or this case is if your account is correct, I would expect this to be in the complaint. Your Honor. Right? I mean, in other words, what you're saying is so significant to the theory of liability of the Title VII retaliation claim. I mean, it's very significant. Your Honor, Mr. Craig isn't a lawyer, and he did not understand the significance of Mr. Schaefer's statements when they were discussing the last chance agreement until after Mr. Schaefer mentioned it in his deposition, and he could talk to his attorney about it. What Mr. Craig was concerned with in the last chance agreement was getting back to work and getting his 14 days paid. He had no idea that conditioning return to work was a violation on dismissing his claims was a violation of the claim, so he simply never mentioned it. It doesn't change the fact that there is an issue of fact in this case about what Mr. Schaefer said during that meeting. This should be an issue for a jury to decide. The case of Bank of Illinois v. Allied Signal Safety Restraint, 75 F. 3rd, 1162, 7th Circuit, 1996, goes really to the question that Judge Scudder just asked. That court, relying on variations in a witness's testimony and any failure of memory through the course of discovery create an issue of credibility as to which part of the testimony should be given greatest weight, if credited at all. Issues concerning the credibility of witnesses and weight of the evidence are questions of fact, which require resolution by the trier of fact. In this case, there are two versions of the facts supported by sworn testimony. In one version, Schaefer told Craig that the last chance agreement required that Craig give up his race discrimination claims if he wanted to return to work. In another version, Schaefer did not make that statement. A jury should decide which is the true version. If this court is to disallow contradictory testimony from plaintiffs to create an issue of fact, it should certainly disallow contradictory testimony from a defendant to eliminate an issue of fact. Rottwasher should be allowed to claim at trial that Schaefer was confused and that Craig is being opportunistic with his memory. But on this record, after Schaefer saw both documents at issue and after a break to help him clarify the issues, a jury could conclude that his deposition testimony is the credible testimony. Schaefer could have easily testified, I don't know or I don't remember, when confronted with the last chance agreement and severance agreement. And his own claim that he told Craig that he would be fired if he did not sign the last chance agreement and give up his race discrimination claims. He did not do that. A jury should decide this credibility issue. Summary judgment should be reversed and the case remanded to the district court for trial. Thank you, Mr. Kinney. The remainder of your time will be the court. I will dispense with my introduction as well and go right to a question Judge Scudder just raised, which was, where was this in the complaint? I would add to that, Judge, where was it when this plaintiff testified under oath in a Wisconsin administrative agency that he rejected the terms and conditions last chance agreement because he didn't get back pay? And separately, that he rejected the severance agreement presented to him post his claims. And that gets to the heart of why the district court was correct in its ruling here. This case goes to the heart of what a district court is able to do under Rule 56 with those two qualifiers, genuine and reasonable. This court has said very emphatically that not all disputes are disputes of fact that preclude summary judgment. Not only do they have to be genuine, that's Carol B. Lynch, 698 F3rd 561. That is exactly what this district court did. I would also hearken the court back in a little different context to the Ortiz case in a Title VII context where this court abolished labels and words like indirect method, indirect method, and mosaic. And Judge Easterbrook wrote the opinion and said, none of that really matters. What we're talking about is look at the evidence as a whole and see if there's a genuine issue for trial and whether a rational trial of fact could agree with the assertion being propounded by the plaintiff. Here, that assertion is that the terms and conditions or last chance agreement was conditioned on Mr. Craig releasing his case. This court established that you can't look at one piece of evidence and does that carry the day and does that one piece of evidence send a case to trial? It said look at the evidence as a whole and put that evidence in context and that is exactly what the district court did in this case. Up to the point that a summary judgment motion was filed, the undisputed evidence in the case was this. Mr. Craig was suspended for approximately 14 days. He was offered, this is undisputed, offered a chance to come back to work under a last chance or terms and conditions agreement. Those are used interchangeably, the parties stipulate. He was told, as he said, that he could sign that and come back to work, but Mr. Craig by his own testimony said, I will sign that but only if you give me my 14 days back pay. There's no evidence in the record where he says, I want my back pay but I can't release my claims. There's no evidence in this case at all when he's talking about why he won't sign the last chance agreement that he was presented with a release ultimatum. Not one term or condition of the last chance agreement requires a release of any legal claim. Absolutely. So if that's a term or condition of the last chance agreement, it's got to be oral. It would have to be extraneous to the document. It would have to be extraneous to the document or more as the district court found, exactly what's presented in the severance agreement later. It doesn't, and I'll get to that because it's a fair point Judge Scudder. One of the things you look at when someone gets confused at deposition, this is the commercial underwriters case that we cited, is you look at the evidence as a whole and what's that independent evidence say about whether someone was confused. The documents in this case say exactly what you just said, Judge Scudder. There's not a term for a release in the terms and condition agreement and there's no evidence in this case that Rot had ever presented that as a term to anyone as its standard practice in this last chance agreement. None. Craig's proceeding didn't raise it at all even though he knew what a release was and the significance because he talked about it as a reason for not signing the severance agreement. Specifically talked about it. And I'd add this, if you're looking at the record as a whole as presented to the district court, this testimony was presented as a, well I checked with the union, says Mr. Schaefer mistakenly at deposition and the union agreed that Mr. Craig was giving up discrimination claims if he signed the last chance agreement and there's not one scintilla of independent evidence to support that at all. There's no claim in this case and it wouldn't make any sense if the union said sure he'd come back to work but that means he's got to give up a discrimination claim. And that's why Judge Ludwig hit the nail on the head when he said it's not any dispute that gets to trial. I'm looking at this evidence as a whole and I do not find that a rational trier of fact would find that something this significant was simply omitted from Craig's testimony in the administrative proceeding from paragraph 22 of his complaint which specifically says he's presented with the terms and conditions or last chance agreement but it didn't contain back pay with no mention of the release. I don't find that a rational trier of fact would find that he would completely omit that from his deposition testimony in this case. And even more, leading in that favor, this supposed memory that Mr. Craig posited to the district court came up only after Mr. Schaefer made his mistake at deposition and that meant something to the circuit court because you're looking at that as one of the holistic view of the evidence. So then you turn back and you say, well, as Mr. Kinney was arguing, does the fact that Mr. Schaefer made a mistake at his deposition necessarily present a credibility issue for trial? We cited you the Ariens case, the commercial underwriter's case, where this court said no it doesn't and it gave some factors to look at to say, well, you can explain why you were confused at the deposition and that's consistent with looking at things as a whole in Ortiz and not grabbing one piece of evidence. And we walked out. Was there evidence at the deposition that Mr. Schaefer was in fact confused? We cited you the deposition testimony in our brief and the district court had it where even when he's presented with the severance agreement, Mr. Schaefer says severance agreement, that's a terms and conditions agreement. He said after a break, given with permission to explain this, he continues to conflate the two documents. The confusion is clear. Mr. Schaefer is the plant manager, correct? I'm sorry? Mr. Schaefer is the plant manager. He's not running the HR department. He's not in the HR department and that was factor two and I'll go there. Is this somebody who should know this? Is he a corporate representative? He was a corporate representative. 30B6? 30B6, which I would say, Your Honor, gives him a duty to be able to, it takes away from him the ability to say, I'm just not familiar with that subject. It does not mean that it doesn't help explain if he got familiar with the subject that he's normally not into, why he would get confused at a deposition. Yeah, he's clearly under an obligation. In my experience, when you have mistakes or you have just massive confusion in a deposition, it's more likely with a 30B6 witness than it is a percipient witness. And that's the only point of the observation with respect to him being the plant manager. Maybe it's on him, he should have prepared better, he should have sorted these agreements out better, all that. But the deposition seems pretty clear that there was no way in the deposition he was going to clarify those two documents. In fact, in the deposition, he espoused repeatedly his inability to do so. And I think, Judge Scudder, you're absolutely correct. You can educate someone as a 30B6 witness on an area they're not familiar with. That doesn't necessarily mean they're not more likely to get confused in that area than, let's say, an in-house lawyer or an HR representative. If we move on from those two factors, the last factor that the commercial underwriter's case cited to was, how does this confusion and now Craig's new story square up with what we call the independent evidence? And we cited that in the brief. And I think it's just uncontroverted. None of this that Schaefer testified to and then Craig filed a declaration or an affidavit to match, matches up to anything that's black and white and on paper here. Whether it's statements from the union, whether it's the words on the document, there's simply no other independent evidence in this case to support any of this other than the fact that Schaefer was mistaken and no rational trier of fact could conclude that Mr. Craig would forget about something so incredibly important to him that he testified he rejected the severance agreement for it, the release, but yet he just forgot to bring this up in terms of the terms and condition agreement. So with that, we believe the district court in this case did exactly what this court has set for the parameters of a Rule 56 motion and applied the term genuine to genuine issue of fact and applied the term rational to whether a rational trier of fact could rule in the way Mr. Craig is arguing here and he applied those and properly granted summary judgment. And with that, we'd ask the court to affirm the summary judgment grant. Thank you, Mr. Huting. We're now going to move to Mr. Kinney for rebuttal. Thank you. An issue is raised about why Mr. Craig didn't raise this before by opposing counsel. Craig isn't a lawyer. He did not know the significance of Schaefer telling him he had to sign the last chance agreement to return to work and that by signing it, Craig was required to surrender his rights under Title VII. So he didn't mention it when Schaefer testified about the conversation. It was not until that point that Craig realized the significance of Schaefer's remarks, which explains why he did not mention it before. Furthermore, Craig is not changing his testimony. He's supplementing it. Nothing in Craig's August 5, 2020 declaration or in his deposition testimony actually contradicts anything that There was also issues about whether Mr. Schaefer was prepared. Mr. Schaefer was testifying about, not about the meanings of certain documents, he was testifying about what he said in a telephone conversation. That's a matter of his memory. That doesn't require preparation. Additionally, unlike the witness in Comer, he was given a chance to actually look at these documents during the deposition to clarify anything. Again, if he was confused, he had the right and the ability to say, I don't know, I'm confused. He didn't say that. He testified that that's what he told Craig, which brings me to the fact that the agreement itself doesn't include the language, and we admit that. Craig's claim, though, that Schaefer told him that it did, and based on the testimony, it's fair to infer that Schaefer believed the last chance agreement required Craig to give up his Title VII rights if he wanted to return to work, and when he didn't sign it, the record is undisputed that Schaefer fired Craig. There was also testimony about the back pay provision being most important to Craig. That's true. It's true that Craig was willing to bargain away his Title VII claim for 14 days of back pay and the ability to return to work at the point where the parties were talking about the last chance agreement. That doesn't change the fact that Schaefer conditioned Craig's return to work on Craig abandoning his Title VII claims at the last chance agreement point. If Schaefer had made a counterproposal to Craig offering to allow Craig to go forward with his discrimination claims instead of giving him the back pay and Craig still refused, maybe the defendant would have an argument, but that is not what happened. Once again, this is not the kind of contradiction that you saw in Comer. This is a case where the witness at issue was prepared, shown both documents, and also, unlike in Schaefer's deposition testimony is the correct testimony, not the declaration. The decision should be reversed and remanded for trial. Thank you. Thank you, Mr. Kinney. Thank you, Mr. Huting. The case will be taken under revisement.